## De France *against* Stricker.

The administrator of a deceased soldier of the Pennsylvania line might draw a tract of donation land, and might receive a patent for the same ; and the title would enure to the benefit of the persons legally entitled. .

A certified extract from the general draft of donation land, showing a particular tract for which a patent had issued, may be received in evidence.

ERROR to the common pleas of *Mercer* county.

This was an action of ejectment by Jacob Stricker against Robert De France and others, for lot No. 96 in the fifth donation district, containing five hundred acres. Hawkins Boon was a soldier of the Pennsylvania line and died in the service, and letters of administration issued upon his estate to Robert Martin. The defendant offered in evidence a certified extract from the general draft of the fifth donation district, being the survey of the land in dispute, in order to show that it had been drawn by Robert Martin, administrator of Hawkins Boon, and that a patent issued to him for the land. The evidence was objected to and the objection overruled, and the defendant excepted. The defence was that the obtaining the patent by the administrator was a fraud upon the law; that the act of 1783, which authorized an administrator to make application for and draw. the donation land of deceased soldiers, was repealed by the act of 1785, and unless the tract was drawn by the widow or by her order, the patent was a nullity, and the tract remains open for settlement. The court (Bredin, President) was of a different opinion, and instructed the jury that the plaintiff, who claimed under the title thus drawn, was entitled to recover. The defendant excepted.

*Banks* and *Pearson*, for plaintiff in error.
*Tate*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—Captain Hawkins Boon was killed in 1779, I believe, in an attempt to relieve Fort Freeling, then beleaguered by the British and Indians under colonel Butler and Brandt, a few days before the battle of Wyoming. Boon left a widow, but no children. His widow afterwards married a man by the name of Fortenbaugh. Robert Martin, Esq., of Northumberland, administered on the estate of Boon, and, it seems, drew for his widow and heirs a tract of donation land, No. 96, five hundred acres, which is the subject of the present suit.

I shall not insert in this opinion the resolutions, nor all the acts of assembly, respecting the lands given to the officers and soldiers who

[De France v. Stricker.]

were in the Pennsylvania line during the war with Great Britain, which terminated by the peace of 1783.   Most of them will be found in the case of Heyl *v.* Mitchel, reported 4 *Binn.* 90.

By the seventh section of the act of the 12th of March 1783, it is directed, that " all officers and private men entitled to land as aforesaid, shall, and they are hereby directed to make their application for the same within two years after peace shall be declared ; and should any of said officers, non-commissioned officers or private men die before the respective applications shall be made, then their heirs, executors or administrators, respectively, are hereby permitted to make such application within one year after the expiration of said time."   I will here observe that the time within which applications should be made, was extended by several acts of assembly, the last of which was passed in 1809, and the time prescribed by it expired in 1811.

On the 24th of March 1785, 2 *Smith's Laws* 294, was passed an act directing the mode of distributing donation lands among the troops of this commonwealth.   Section four directs who shall be entitled.   Among these we find "the widows and children, or either thereof, of such officers and privates as were slain in battle, or died in the service."   This act, however, does not expressly state who was to apply and draw, but the act of the 6th of April 1792, 2 *State Laws* 239, directs, that on the application of any person entitled to donation lands, or *his legal representatives* patents should issue in the usual form.   And the act of the 17th of April 1795 enacts, that the legal representatives of any person deceased shall be entitled to all the advantages and emoluments of this act.   Robert Martin, then, the administrator of Hawkins Boon, could draw, and a patent could legally issue to him in trust for the widow and children of Hawkins Boon, and that patent will enure to the benefit of the person or persons legally entitled, 4 *Binn.* 90, before referred to; and as he had no children, the widow was entitled, as was decided in the same case.

The act of the 24th of March 1785 gives minute directions for surveying and numbering the lots, and making a general draft, in which the number of each lot shall be inserted ; which draft, by section twelve, shall be kept by the supreme executive council, until after all applications agreeably to this act shall have been satisfied; and afterwards shall be safely deposited in the office of the master of the rolls, as *a public record, to serve to all intents and purposes in lieu of recording the patents,* any law, custom or usage to the contrary notwithstanding.   Now of *a public record* in an *office having an officer* and a seal, *an official copy* under that seal is *evidence.*

The copy of a patent recorded according to law is evidence, when made by the proper officer, and under his official signature and the seal of his office ; and what is by law made to serve to all intents and purposes in lieu of recording a patent, must be something of which an official copy under seal will be evidence.

[De France v. Stricker.]

Even in the case of an ordinary tract of land, the patent for which is recorded at length, and a copy of which patent is given in evidence, there are cases in which the possession of the original patent by another party may be of great avail in trying some questions as to the right of different claimants to land : as in case of a lost deed, the possession of the original patent delivered when the deed was delivered, may make a material link in the evidence to supply the lost deed, and perhaps in some other cases; but in general, in a contest with a party not claiming under the patent, an official copy is as good as the original.

It is a singular matter that in the trial of this cause, the death of Boon, leaving no children, but a widow, and that she afterwards married Fortenbaugh, were all proved by a witness of the defendant, as well as by the plaintiff's testimony, but defendant's witness also swore that about 1821 she denied that she knew of Martin's drawing this tract and taking a patent for it. All this may be true, and yet, when she did know it, she may claim the tract and sell it ; she could ratify the act if it needed ratification. But that was hardly necessary ; the administrator could draw and take the patent: he took it in trust, and she was the *cestui que trust.* The land was hers, and her sale passed the title.

Judgment affirmed.